## SETTLEMENT AGREEMENT, GENERAL RELEASE AND WAIVER

This Settlement Agreement, General Release and Waiver ("Agreement") is made by and between Middlebury Community Schools ("MCS") and Kevin Pack (the "Plaintiff") (collectively referred to as the "Parties").

### RECITALS

A.　　On January 21, 2015, the Plaintiff filed a Complaint against MCS in the Federal District Court for Northern District of Indiana, alleging violations of Title VII of the Civil Rights Act of 1964 and the Indiana Constitution captioned as *Pack v. Middlebury Community Schools*, Cause No. 3:15-CV-00028-PPS-CAN (the "Lawsuit"). The claims in the Lawsuit arose from disputes regarding Plaintiff's employment as a certified teacher at MCS, the treatment of Plaintiff by the MCS administration, the termination of Plaintiff's employment with MCS and the Plaintiff's challenge of that termination (the "Disputes").

B.　　MCS denies that it has committed any unlawful act with respect to Plaintiff or his employment as alleged in the Lawsuit or otherwise related to the Disputes. This Agreement is not an admission of any kind by MCS of any wrongdoing or liability.

C.　　The Parties have recognized the burdens they both face in litigation, including the expense and distraction of continued litigation to MCS and to Plaintiff; accordingly, the parties mutually desire to cease further litigation related to any Disputes which now exist, had previously existed or may have existed between them regarding Pack's employment with MCS. By this Agreement, the Parties mutually terminate the Lawsuit without either Party conceding any wrongdoing but instead agree to immediately settle the Disputes and be spared the burdens of further litigation.

1

Plaintiff's Initials KP

**EXHIBIT 1**

## AGREEMENT

In consideration of the matters set forth, the terms of this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties further agree as follows:

1. <u>Consideration</u>. In exchange for the mutual promises contained in this Agreement and the actions taken pursuant thereto, Plaintiff shall receive the gross sum of Twenty Two Thousand Dollars ($22,000.00) ("Settlement Amount"). Ten Thousand Dollars ($10,000.00) shall be paid by MCS; Twelve Thousand Dollars ($12,000.00) shall be paid from MCS' insurance carrier. Both checks shall be made payable to Kevin Pack, and represent a compromise of any and all claims Plaintiff has raised, or could have raised, in connection with his employment with MCS.

These checks will be mailed to: Matthew J. Anderson, Anderson, Agostino & Keller, P.C., 131 South Taylor Street, South Bend, Indiana 46601, within fourteen (14) calendar days after the receipt of an executed copy of this Agreement from Plaintiff and receipt of the Stipulation of Dismissal signed by Plaintiff's counsel. Plaintiff acknowledges that the Released Parties (as defined in paragraph 3 below) have not provided any tax advice to Plaintiff in connection with the proceeds payable under this Agreement. Plaintiff agrees to be solely and exclusively responsible for payment of any taxes due on these amounts. Plaintiff agrees to pay any federal or state taxes that are required by law to be paid with respect to the payment, and agrees to fully indemnify and hold harmless the Released Parties for any liability for such taxes, including but not limited to liability for withholdings, FICA or FUTA, and any interest and penalties which may be assessed for non-payment or late payment of such taxes.

2

Plaintiff's Initials 

2. <u>Payment Acknowledgment</u>. Plaintiff acknowledges and agrees that he is not entitled to the Settlement Amount under any contract with, or benefit plan of MCS and that, upon payment of the Settlement Amount, he will have been paid all minimum and other wages, overtime, bonuses, vacation, paid time off, benefits, and other amounts in connection with his employment with MCS and the ending of that employment. Plaintiff acknowledges and agrees that neither MCS nor any other person or entity owe him anything beyond payment of the Settlement Amount based on any alleged acts or omissions relating to his employment with MCS.

3. <u>Release, Discharge, and Covenant Not to Sue</u>. By signing this Agreement, Plaintiff, for himself and for his successors and assigns, irrevocably and unconditionally releases, forever discharges, and covenants not to sue MCS, both individually and in its representative capacities, its agents, its trustees, directors, officers, employees, the Middlebury Community School Board (including its board members), its attorneys, insurers, predecessors, heirs, executors, administrators, successors, or assigns, and all persons acting by, through, under or in concert with any of them (collectively, the "Released Parties") from all charges, complaints, claims, demands, liabilities, obligations, and actions of any kind or nature whatsoever (including for attorneys' fees) that have accrued or will have accrued as of the date Plaintiff executes this Agreement, whether or not any such matter or claim was asserted or could have been asserted in the Lawsuit, including, for example, claims for attorneys' fees, interest, expenses, expert fees, and costs incurred in connection with the Employment Lawsuit, claims for minimum wage, overtime, lost wages, compensatory damages, liquidated damages, punitive damages, incidental damages of any kind, and any other compensation, losses, and other damages to Plaintiff or his property resulting from any claimed violation of federal, state, local, or common law. This

3                                                        Plaintiff's Initials _KP_

specifically includes, but is not limited to, a full and complete release and waiver of all claims (a) that were or could have been asserted in the Lawsuit, (b) that in any way arise out of, or relate to, or are connected with the Disputes and Plaintiff's employment with MCS and the ending of that employment, (c) that in any way arise out of, or relate to, or are connected with Plaintiff's relationship or interactions with and/or alleged conduct by MCS or any of its predecessors, employees, agents, or attorneys, (d) arising under any and all federal, state, and local laws, statutes, and regulations, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, the Fair Labor Standards Act as amended, the Americans with Disabilities Act, the Indiana Civil Rights Act, (e) the Indiana or United States Constitutions, and (f) based on contract, tort, common law, and other theories of recovery.

Plaintiff specifically acknowledges that: (a) this Agreement does not make him a prevailing party for purposes of any claim he could have or did assert in the Lawsuit, and therefore, (b) Plaintiff is not entitled to attorneys' fees, costs, or any other remedy provided to a prevailing party. In addition, to the fullest extent permitted by law, Plaintiff further agrees to forego all legal, equitable, and statutory relief, reinstatement, back and front pay, attorneys' fees, and other damages, benefits, remedies, or relief to which she may be entitled as a result of any claim, or complaint against the Released Parties and further agrees to forego reinstatement, all back and front pay, and other damages, benefits, remedies, attorneys' fees, and relief he could receive from claims, actions, or suits filed or charges instituted or pursued by any agency or commission based upon or arising out of the matters that are released and waived by this Agreement.

Nothing in this Agreement prevents Plaintiff from making or participating in a Charge filed with the Equal Employment Opportunity Commission or its equivalent state or local

4             Plaintiff's Initials _KP_

agencies. However, to the fullest extent permitted by law, Plaintiff agrees to relinquish and forego all legal, equitable, and statutory relief, reinstatement, back pay, front pay, and other damages and relief to which he may be entitled as a result of any claim, charge, or complaint against the Released Parties and agrees to forego and relinquish reinstatement, all back pay, front pay, and other damages and relief he could receive from claims, actions, or suits filed or charges instituted or pursued by any agency or commission based upon or arising out of the matters that are released and waived by this Agreement. This release does not include any claims that cannot by law be released through this Agreement, but MCS intends that it be construed as broadly as lawfully possible.

4. No Admission. This Agreement does not constitute an admission of any kind by Defendants that they violated any law or regulation or committed any wrongful act of any kind whatsoever. Defendants deny that they committed any unlawful act or omission with respect to Plaintiff or his employment. The payment of money to Plaintiff and his signing of this Agreement do not in any way indicate that Plaintiff has any viable claims against MCS or that MCS admits any liability to Plaintiff whatsoever. Plaintiff does not claim to be, and specifically denies, that he is a prevailing party in the Employment Lawsuit. This Agreement, an amicable resolution of disputed claims, may not be introduced into evidence or relied upon by either party in legal proceedings except proceedings regarding breach of the terms of this Agreement or by MCS in defending claims relating to Plaintiff's employment.

5. No Other Actions. Plaintiff represents and warrants that other than the Lawsuit and the complaint he filed with the EEOC, he has not filed any other lawsuit, charge or complaint or commenced an action of any kind in any forum, judicial, administrative, or otherwise, against MCS and/or the other Released Parties.

Plaintiff's Initials KP

NOV-14-2016 23:39 From: To:7653628796 Page:6/12

USDC IN/ND case 3:18-cv-00924-DRL document 1-1 filed 11/14/18 page 6 of 12
11/14/2016 09:45 765-362-8795 WERNLE RISTINE AYER PAGE 07/14

6. <u>Confidentiality</u>. The Parties agree to the following with respect to confidentiality:

    A. <u>Plaintiff's commitment</u>. Plaintiff agrees that he has not disclosed and will not disclose to any person or entity, either on his own or through another person or entity, directly or indirectly, or by implication or innuendo any information regarding the existence or substance of this settlement including but not limited to the fact of the settlement itself, the terms of this Settlement Agreement and the Settlement Amount, except as set forth below. This nondisclosure includes, but is not limited to members of the media, present and former employees of MCS or members of the public. Plaintiff further agrees not to disclose, disseminate, or reveal the original, any copy, or any portion of this Agreement, directly or indirectly (including through social media), to any person or entity, not to publicize or assist in the publicity, of this Agreement and not to attempt to communicate regarding the fact of this settlement or the terms of this Settlement Agreement, except as set forth below. Plaintiff agrees he will not do or say anything inconsistent with maintaining confidentiality of this Settlement Agreement and the Settlement Amount. Nothing in this paragraph or this Agreement generally prohibits Plaintiff from disclosing the terms of this Agreement to Plaintiff's attorney, from making disclosures required by law or pursuant to compulsory process issued in connection with any administrative or judicial proceeding, or from disclosing the terms of this Agreement to accountants and tax preparers to the extent necessary to fulfill any tax obligations or to protect his reputation should it be proven that the confidentiality of this Agreement has been breached by MCS. Plaintiff agrees that in response to inquiries regarding his claim or this litigation he will state only that "the case has been settled under confidential terms" and nothing more shall be said by Plaintiff about this matter.

6

Plaintiff's Initials KP

B. <u>MCS commitment</u>. MCS will not disclose or release the terms of the Agreement except as may be required by law or pursuant to compulsory process issued in connection with any administrative or judicial proceeding and only to the extent required by law or to disclose the terms of this Agreement to accountants and tax preparers to the extent necessary to fulfill any tax obligations or to protect its reputation should it be proven that the confidentiality of this Agreement has been breached by Plaintiff. Otherwise, MCS will not disclose or discuss the dispute or the settlement. MCS agrees that it will not make any public representations concerning Plaintiff and in the event that it receives any inquiries from prospective employers of Plaintiff, the agents and/or employees of MCS will provide only Plaintiff's positions held and dates of employment, without other information or comment. MCS agrees that in response to inquiries regarding the Plaintiff's claim or the litigation MCS will state only that "the case has been settled under confidential terms" and nothing more shall be said by MCS about this matter.

C. <u>Non-disparagement</u>. The parties further agree that neither they nor their representatives will disparage the other party. Disparage as used herein shall mean any communication, verbal or written, of false or defamatory information or the communication of information with reckless disregard to its truth or falsity. The employer agrees that it shall not make any statements, either internally or externally, that reflect adversely on Mr. Pack's job performance, and Plaintiff agrees that he will not make any representations that disparage, demean, or impugn MCS, including without limitation any statements impugning the personal or professional character of any

7

Plaintiff's Initials KP

director, officer, or employee for MCS, nor will Plaintiff encourage or assist others to make any such statements or representations. Each party shall refrain from all conduct, verbal or otherwise, which would damage or impair in any way the others' reputation, goodwill, services, or standing in the community through any medium whether written, tangible, electronic, computerized, verbal, or any other form including the internet, e-mail, or other modalities.

D. <u>Material inducement.</u> The Parties agree that their mutual agreement to maintain the confidentiality of the terms of this Agreement is a material inducement to enter this Agreement. Accordingly, each Party understands and agrees that if he or it should fail to comply with any of the provisions in this paragraph, and such failure to comply is proven by clear and convincing evidence that it was solely the act or omission of Plaintiff or MCS that caused the confidentiality of this Agreement to be breached then the Parties acknowledge that the aggrieved Party will have suffered material damage.

7. <u>Waiver of Future Employment.</u> Plaintiff agrees that he will not seek employment with or work as a contractor for MCS. Plaintiff agrees that MCS has the right under this Agreement not to hire him if he does seek employment or to refuse his assignment or engagement as a contractor. Plaintiff further agrees that if he becomes employed by MCS or assigned to or engaged by MCS as a contractor, then MCS has the right under this Agreement to terminate his employment or to cancel his services, assignment, or engagement. Plaintiff releases MCS and the other Released Parties from any and all liability and waives any and all claims that may arise from or relate to the denial or termination of his employment or contractor relationship.

8

Plaintiff's Initials KP

8. <u>Further Assurances.</u> Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Agreement and to dismiss the Employment Lawsuit with prejudice. The parties, by their respective counsel, shall enter into and file a stipulation of dismissal with prejudice of all claims now pending in the Employment Lawsuit, each party to bear their own costs, upon execution of this Agreement.

9. <u>Representation.</u> The Parties represent and warrant that they have not assigned or transferred to any person or entity any of the claims released above, and that each is the sole party in interest with respect to such claims.

10. <u>Knowledge, Voluntariness, and Nonreliance.</u> Plaintiff acknowledges that he is represented by counsel, has had an ample and reasonable opportunity to review and discuss all aspects of this Agreement with his counsel, carefully has read and fully understands the provisions of this Agreement, and is voluntarily entering into this Agreement. Plaintiff further acknowledges that in agreeing to this settlement of the Employment Lawsuit and his claims against the Released Parties and in executing this Agreement, he does not rely and has not relied upon any representation or statement made by the Released Parties or any of their agents, representatives, or attorneys other than those specifically stated in this Agreement. In view of the foregoing and because each party also has had the opportunity to negotiate fully the terms of this Agreement, this Agreement shall be interpreted and construed without any presumption or inference based upon or against the party causing this Agreement to be drafted.

11. <u>Disputes.</u> The Parties agree that any action for breach of this Agreement will be filed in a court of competent jurisdiction in St. Joseph County, Indiana. All Parties hereby agree to consent to the jurisdiction of such court and agree that venue is proper. In any action for breach, attorneys' fees and costs of collection shall be awarded to the prevailing party.

9

Plaintiff's Initials _KL_

NOV-14-2016 23:42 From: To:7653628796 Page:10/12

USDC IN/ND case 3:18-cv-00924-DRL    document 1-1    filed 11/14/18    page 10 of 12
11/14/2016  09:46   765-362-8796   WERNLE RISTINE AYER   PAGE 11/14

12. Governing Law. The terms and conditions of this Agreement and the Parties' obligations hereunder shall be construed under and be governed by the laws of Indiana, without regard to principles of choice of law.

13. Entire Agreement. This Agreement contains the entire agreement between the Parties with respect to the settlement of the disputes and lawsuits and the claims that the Parties have or could have asserted as of the execution of this Agreement. The Parties have not relied on representations or promises of any other party to execute this Agreement, other than the representation and promises contained in this Agreement.

14. Headings and Recitals. The headings to this Agreement are for convenience and identification purposes only, are not integral parts of this Agreement and are not to be considered in the interpretations of any part of this Agreement. The Recitals are an integral part of this Agreement and are incorporated by this reference.

15. Negotiated Agreement /Construction: This Agreement is the result of negotiations among the Parties. Counsel of record for each party have reviewed and drafted its contents together. Thus, the Parties expressly agree that no party shall be deemed to be the drafter of this Agreement. The language of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party.

16. Advice of Counsel. Both Parties have been represented by legal counsel of their own choice in the negotiation of the compromise and settlement provided for in this Agreement, and each Party has freely decided to agree to the terms of this Agreement after receiving advice from his/her own counsel about the legal effect of this Agreement.

17. Acknowledgements. Plaintiff acknowledges that he has (a) carefully read and fully understands the provisions of this Agreement, (b) had a reasonable time to consider it,

10                                                        Plaintiff's Initials _KP_

(c) had reasonable opportunity to discuss all of the provisions of this Agreement with his attorney, and (d) entered into this Agreement voluntarily.

18. <u>Severability.</u> The Parties agree that if any provision of this Agreement is declared by any court of competent jurisdiction to be unenforceable, invalid, or illegal, such unenforceability, invalidity or illegality will not affect the enforceability, validity or legality of the remainder of this Agreement.

19. <u>No Waiver.</u> The failure of MCS to insist in any one or more instances upon performance of any of the provisions of this Agreement or to pursue its rights hereunder shall not be construed as a waiver of any such provisions or the relinquishment of any such rights.

20. <u>Binding on Successors and Assigns.</u> All of the terms and conditions of this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

21. <u>Counterparts.</u> The Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one document.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates indicated below.

MIDDLEBURY COMMUNITY SCHOOLS

By:_____

Its:_____

Dated:_____

11                                                        Plaintiff's Initials _KP_

KEVIN PACK

*Kevin D. Pack*

Dated: 11/14/16

US.106222803.05

NOV-14-2016 23:43 From: To:7653628796 Page:12/12
USDC IN/ND case 3:18-cv-00924-DRL document 1-1 filed 11/14/18 page 12 of 12
11/14/2016 09:46 755-362-8796 WERNLE RISTINE AYER PAGE 13/14