UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN PACK,<br><br>        Plaintiff,<br><br>    v.<br><br>MIDDLEBURY COMMUNITY<br>SCHOOLS *et al.*,<br><br>        Defendants. | CAUSE NO. 3:18-CV-00924 DRL-MGG |

### OPINION & ORDER

After Middlebury Community Schools (MCS) terminated Kevin Pack's employment, the school posted on its website a press release announcing his termination. He sued, alleging he was fired for his atheist beliefs. The two parties resolved the case through a settlement agreement containing a confidentiality and non-disparagement clause.

Thence began his covert operation: he recruited acquaintances to call MCS incognito, disguised as prospective employers, to obtain information from the school about him. His mission proved possible. These acquaintances elicited responses from MCS that he claims violated the settlement agreement. He says MCS added insult to injury by not removing the press release from its website and by submitting an affidavit in Mr. Pack's defamation lawsuit against *The Elkhart Truth*. He claims these actions violated the non-disparagement obligations in the settlement agreement.

MCS views the case as unworthy of a trial and requests summary judgment. Its request has led to a whole host of other motions, including reciprocal motions to strike, a motion for leave to supplement briefing, and now even a motion for a hearing because MCS and its retired employees continue to receive calls from Mr. Pack that they consider intimidating and harassing. The court now grants summary judgment for MCS, addressing these other matters in consequence.

BACKGROUND

Middlebury Community Schools is a public school corporation located in Middlebury, Elkhart County, Indiana. Its high school is Northridge High School. Jane Allen has served as MCS's superintendent since July 1, 2012.

In August 2013, Kevin Pack began teaching German at Northridge High School on a probationary contract. Shortly thereafter, Superintendent Allen began receiving complaints about him from students, parents, and faculty. MCS investigated these claims and issued a "Notice of Preliminary Decision of Immediate Cancellation of Contract" to Mr. Pack. Four days later, on February 28, 2014, Superintendent Allen recommended his termination to MCS's board.

About a month later, the school board held a hearing and decided to terminate Mr. Pack's employment. Its decision was explained through more than seventy findings of fact (though not presumed true for purposes of this motion today). The school board authorized a press release to explain its decision, then posted it on MCS's website in April 2014. The press release stated, among other things, that Mr. Pack was "a poor teacher whose overall performance regressed throughout the school year and showed no potential for improvement." ECF 40-5.

In January 2015, Mr. Pack initiated a discrimination lawsuit against MCS alleging that he was fired because he was an atheist. A reporter from *The Elkhart Truth* began investigating the story and interviewed both Mr. Pack and Superintendent Allen. This culminated in an article entitled "Fired Northridge teacher, an atheist, sues Middlebury Community Schools for religious discrimination," which was published in *The Elkhart Truth*.

In November 2016 (two years after Mr. Pack filed his discrimination lawsuit against MCS), the two parties entered into a settlement agreement. The agreement contained a confidentiality and non-disparagement provision:

> MCS agrees that it will not make any public representations concerning [Mr. Pack] and in the event that it receives any inquiries from prospective employers of [Mr. Pack],

2

> the agents and/or employees of MCS will provide only [his] positions held and dates of employment, without other information or comment. . . .
>
> The parties further agree that neither they nor their representatives will disparage the other party. Disparage as used herein shall mean any communication, verbal or written, of false or defamatory information or the communication of information with reckless disregard to its truth or falsity. [MCS] agrees that it shall not make any statements, either internally or externally, that reflect adversely on Mr. Pack's job performance, and [he] agrees that he will not make any representations that disparage, demean, or impugn MCS, including without limitation any statements impugning the personal or professional character of any director, officer, or employee for MCS, nor will [Mr. Pack] encourage or assist others to make any such statements or representations. Each party shall refrain from all conduct, verbal or otherwise, which would damage or impair in any way the others' reputation, goodwill, services, or standing in the community through any medium whether written, tangible, electronic, computerized, verbal, or any other form including the internet, e-mail, or other modalities.

ECF 40-8 ¶¶ 6(B), (C).

Shortly after the settlement agreement was consummated, Mr. Pack filed a defamation lawsuit against the owner of *The Elkhart Truth* for its article. Superintendent Allen submitted an affidavit in the case when the newspaper moved to dismiss it. ECF 40-10.

In June 2018, Mr. Pack asked two acquaintances, Lawton Dickens and Sidney Schneider, to call MCS and pose as potential employers. No matter its deception—they lied in several respects rather than just paltered—Mr. Pack wanted to know what was being said about him to potential employers because he was not getting other job offers. On three occasions, Mr. Dickens spoke to MCS on the phone posing as a prospective employer and inquiring into Mr. Pack's performance at the school. ECF 40-3 at 125-29 (first call); *id.* at 141-45 (second call); *id.* at 149-51 (third call). In one such call, Superintendent Allen said that Mr. Pack had been "terminated by the school board" and that his termination was "a matter of public record." *Id.* at 126-27; *see also* ECF 51-2 (consistent transcript). In a call with Mr. Schneider, Superintendent Allen said "he was terminated" and "for cause." ECF 51-3.

In November 2018, Mr. Pack filed this action alleging MCS breached the non-disparagement provision in the settlement agreement. His claims stem from three events: (1) when Superintendent Allen told Mr. Dickens over the phone that Mr. Pack was terminated, (2) when MCS left the April

2014 press release on its website after the settlement agreement, and (3) when Superintendent Allen submitted an affidavit to the state court during Mr. Pack's defamation lawsuit against *The Elkhart Truth*. MCS has moved for summary judgment on all claims.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Indiana law applies here. A federal court sitting in diversity applies the substantive law of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits."). Likewise, the agreement at issue specifies that Indiana law governs here. ECF 40-8 ¶ 12.

DISCUSSION

    A.    *MCS Didn't Breach the Settlement Agreement When Superintendent Allen Responded to Hoax Phone Callers.*

This case starts and ends with the settlement agreement's plain language. "[W]hen the terms of a contract are drafted in clear and unambiguous language, we will apply the plain and ordinary meaning of that language and enforce the contract according to those terms." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). "To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Id.* According to Mr. Pack, MCS breached the settlement agreement when Superintendent Allen told an undercover actor that Mr. Pack was terminated. Not so.

Mr. Pack argues that MCS violated only paragraph 6(B): "MCS agrees that . . . in the event that it receives any inquiries from prospective employers of [Mr. Pack], . . . MCS will provide only [Mr. Pack's] positions held and dates of employment, without other information or comment." ECF 40-8. This clause unambiguously prescribes MCS's duties in the face of inquiries from "prospective employers." The hoax callers, though perhaps in line for an Oscar, weren't prospective employers of Mr. Pack. In fact, Superintendent Allen hasn't received any inquiries about Mr. Pack from prospective employers. Mr. Pack offers no evidence to contradict these facts. There was no breach of paragraph 6(B) or consequent damage on this record. No triable issue on this point remains.

    B.    *MCS Wasn't Required Under the Settlement Agreement to Retract or Remove the Press Release from its Website.*

Mr. Pack claims that "[m]aintaining the [press release] is a clear disparagement and in violation of the Settlement Agreement." ECF 51 at 7. MCS disagrees and argues that (1) Mr. Pack waived and released any claim related to the press release when he signed the settlement agreement, and (2) the press release predated any obligations mandated by the settlement agreement.

A release of claims is a contract and should be interpreted as such. *Haub v. Eldridge*, 981 N.E.2d 96, 101 (Ind. Ct. App. 2012). Again, the court starts with the contract's language to see whether the release precludes Mr. Pack's claims. *Haegert*, 977 N.E.2d at 937. The settlement agreement states:

> By signing this Agreement, Plaintiff . . . irrevocably and unconditionally releases, forever discharges and covenants not to sue MCS . . . from all charges, complaints, claims, demands, liabilities, obligations, and actions of any kind . . . that have accrued or will have accrued as of the date Plaintiff executes this Agreement . . . .

ECF 40-8 ¶ 3.

As MCS points out, "[w]aiver is the intentional abandonment or relinquishment of a known right." *Bobeck Real Estate Co., Inc. v. Frontier N., Inc.,* 120 F. Supp.3d 845, 853-54 (N.D. Ind. 2015). From the language of the settlement agreement, Mr. Pack relinquished all rights to sue MCS for claims that had accrued before or on the date Mr. Pack signed the agreement, including any common law harm attributed to the press release. That much is true. That said, the release provision speaks to conduct that accrued to a claim at or before the time of signing the settlement agreement, but not after.

MCS's waiver and release argument thus makes no sense. Mr. Pack's contract claim could not have accrued before he signed the settlement agreement; the settlement agreement is the very source of the only claim here. Mr. Pack is asserting rights under the non-disparagement provision that prohibits statements that reflect adversely on his job performance. So, while Mr. Pack released all accrued claims against MCS at the moment he signed the agreement, he became endowed with rights to sue MCS for breaches of the settlement agreement, including the non-disparagement clause. At the same time, however, the settlement agreement didn't revive old claims.

When determining whether a party has breached its duties in a contract, the court starts with the contract's language to ascertain the parties' intent. *Haegert*, 977 N.E.2d at 937. "The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone." *Payday Today, Inc. v. Defreeuw*, 903 N.E.2d 1057, 1062 (Ind. Ct. App. 2009). The court must accept an interpretation of the agreement that

"harmonizes its provisions as opposed to one which causes the provisions to be conflicting." *R.R. Donnelley & Sons v. Henry-Williams, Inc.*, 422 N.E.2d 353, 356 (Ind. Ct. App. 1981). The court "cannot make a contract for the parties," nor will it "revise a contract or supply omitted terms while professing to construe it." *Ind. Gas Co. v. Ind. Fin. Auth.*, 977 N.E.2d 981, 997 (Ind. Ct. App. 2012).

Even conceding as MCS seemingly does that the 2014 press release reflects adversely on Mr. Pack's job performance—saying he was a "poor teacher whose overall performance regressed throughout the school year and showed no potential for improvement"—the settlement agreement plainly didn't require MCS after November 2016 to retract or remove a website post from April 2014. The non-disparagement provision is written prospectively, not retroactively. *See, e.g.*, *Platinum Luxury Auctions v. Concierge Auctions, LLC*, 227 So.3d 685, 688-89 (Fla. Ct. App. 2017) (reversing trial court for ordering removal of January 2014 online article when September 2016 settlement agreement concerned future non-disparagement obligations). Also, leaving the press release online (at most an omission) is a far cry different than making a disparaging statement or republishing the statement—what the non-disparagement clause would prohibit.

MCS's argument about its obligations under Indiana's Access to Public Records Act is rather beside the point. It insinuates that this statute required MCS to leave the press release active on its website. APRA is a public access law, not a retention schedule that prescribes the manner of recordkeeping in the true sense. Nothing in APRA prohibits the school from removing the press release from its website and appropriately maintaining a copy for access through other means. *See* Ind. Code §§ 5-14-3-2(n) (defining "public record"), 5-14-3-3 (permitting public agencies to provide the "requested copies"), 5-14-3-7 (public agencies must "protect public records from loss, alteration, mutilation, or destruction"). Public agencies change their websites all the time; that's not a violation of the law. It seems silly to suggest otherwise.

Still, Mr. Pack learned of the press release in 2014. At the time he negotiated the settlement agreement in 2016, he confessed he was not concerned about it. ECF 40-3 at 74. He could have made its removal from the website a material term of settlement. He didn't. There isn't a requirement for MCS to actively search and remove from ready public consumption statements that he, now after the fact, believes adversely reflect on his job performance. No matter the court's sense of fairness, or what it might view as the higher or nobler course of action, or even what it might have brokered in settlement, the court will not rewrite the settlement agreement for the parties here. *See Ind. Gas*, 977 N.E.2d at 997; *Payday Today*, 903 N.E.2d at 1062. Under the law, MCS is entitled to summary judgment on this point.

    C.    *MCS Enjoys Absolute Privilege for Submitting an Affidavit in Mr. Pack's Lawsuit Against the Newspaper.*

Mr. Pack argues that MCS breached the non-disparagement clause of the settlement agreement when Superintendent Allen submitted an affidavit for *The Elkhart Truth*'s motion to dismiss his defamation lawsuit. MCS asserts absolute litigation privilege—a doctrine that Mr. Pack leaves unaddressed. His waiver reads as a wise concession.

Indiana has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements. *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008); *Wilkins v. Hyde*, 41 N.E. 536, 536 (Ind. 1895); *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998). "Public interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged." *Van Eaton,* 697 N.E.2d at 494.

Mr. Pack argues forcefully that the school's affidavit was voluntary, not compelled. Today, the privilege applies equally to a claim based in contract, and to all testimony, whether compelled or voluntary, so long as relevant to the case. *See Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 378 (7th Cir. 2010)

(interpreting Indiana law and applying absolute privilege to voluntary statements in a RICO complaint, though parties were subject to non-disparagement provision from settlement of prior suit) (collecting cases); *see also Van Eaton*, 697 N.E.2d at 494 (absolute privilege also immunizes witnesses who, in a judicial proceeding, "publish defamatory material with an improper motive"). Mr. Pack offers no authority to the contrary. Summary judgment for MCS is thus appropriate on this point.

D. *The Court Grants Mr. Pack's Motion to Supplement But Denies the Remaining Motions, Including the Reciprocal Motions to Strike.*

Both parties seek relief under N.D. Ind. L.R. 1-3: "If a person files a paper that does not comply with the rules governing the form of papers filed with the court, the court may: (1) strike the paper form the record." It is not mandated that the court strike noncompliant papers. In fact, motions to strike are generally disfavored, "and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp.3d 940, 948 (N.D. Ind. 2016); *Kuntzman v. Wal-Mart*, 673 F. Supp.2d 690, 695 (N.D. Ind. 2009). The court is not even required to strike inadmissible evidence: "the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(2)-(4)).

In large measure, the court need not strike either party's materials to reach its conclusions today, especially since neither party is prejudiced in this ruling by the contested evidence. *See Rodgers,* 167 F. Supp.3d at 948. "[I]t is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement." *Mayes v. City of Hammond*, 442 F. Supp.2d 587, 596 (N.D. Ind. 2006). The court has done so.

Even so, the result is the same: Mr. Pack has not designated any facts giving rise to genuine triable issues. This remains true though the court grants his motion to supplement his briefing with a designation of evidence that improves on his earlier submission, albeit without complying with the full dictate of Fed. R. Civ. P. 56 or N.D. Ind. L.R. 56-1. Outside of a few deposition designations, he offers the other materials only generally, not particularly as the rules require. *See* Fed. R. Civ. P. 56(c)(1)(A) (parties must "cit[e] to *particular parts of materials* in the record"); N.D. Ind. L.R. 56-1(b)(2) (party must "identif[y] the *material facts* that the party contends are genuinely disputed so as to make a trial necessary") (emphases added). The court will not scour the record without a suitable proffer of material facts. *See Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016); *Waldridge*, 24 F.3d at 923-24; *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The material is nonetheless light in review, so Mr. Pack should not be troubled by this—he has no case here.

That leaves MCS's motion to strike largely moot. The court strikes only the affidavit of James A. Tucker—an affidavit that never identifies who he is, that makes improper legal conclusions, that purports on this record to make several statements without a foundation of personal knowledge, and that is not used in Mr. Pack's response in any event.

Mr. Pack's motion to strike is also denied as moot. The court doesn't presume the truth of the school's findings for purposes of today's ruling. The court grants summary judgment for other reasons, so the findings prove immaterial to the court's decision.

MCS requests a hearing to discuss Mr. Pack's contact with two retired school employees and a current one in April 2020 that they consider intimidating or harassing. MCS calls this a "discovery dispute"—though that process has long concluded. It remains unclear what remedy MCS seeks, or why MCS has standing for retired employees. Given the ruling today, with this case dismissed, the court sees little cause for the parties, including representatives or witnesses, to have ongoing contact with each other. In the era of a pandemic, with schools closed, that is no less true. That should alleviate

any concern and render this motion moot. If it doesn't, the parties have their legal recourses—mindful that certain remedies anticipate they come to bar without unclean hands.

## CONCLUSION

Accordingly, the court DENIES AS MOOT Kevin Pack's motion to strike MCS's exhibit (ECF 52); DENIES AS MOOT MCS's motion to strike (ECF 58), except in the respect that the court STRIKES the affidavit of James A. Tucker (ECF 51-5); GRANTS Mr. Pack's motion for leave to file a supplement to its brief in opposition to summary judgment (ECF 59); and DENIES AS MOOT MCS's motion for a hearing to address a discovery dispute (ECF 62).

Regarding summary judgment, MCS did not disclose contractually prohibited information to "prospective employers" under paragraph 6(B) of the settlement agreement. MCS did not have an affirmative obligation to remove or retract a public record from April 2014 on its website because of a non-disparagement provision in its November 2016 settlement agreement. MCS enjoys absolute privilege for the affidavit its superintendent submitted in Kevin Pack's related case against *The Elkhart Truth*. Accordingly, the court GRANTS summary judgment for MCS on all claims (ECF 38) and DIRECTS the clerk to enter judgment for MCS. This order terminates the case.

SO ORDERED.

April 30, 2020                                             *s/ Damon R. Leichty*
                                                                    Judge, United States District Court